IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JENNIFER BROWN | : | CIVIL ACTION |
| v. | : | |
| COUNTY OF NORTHAMPTON | : | NO. 09-1343 |

MEMORANDUM

McLaughlin, J.                                              December 3, 2010

The plaintiff, Jennifer Brown, is an African American female who alleges that she was discriminated against by her employer, defendant Northampton County, and terminated due to her race, in violation of Title VII, 42 U.S.C. § 2000e et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq. The plaintiff claims that the defendant failed to adequately train her during her probationary period due to racial animus, and that as a result, she was terminated from her position for failure to successfully perform her job. The defendant now moves for summary judgment on the plaintiff's claims, asserting that the plaintiff's training was no worse than that of any other employee in her department and that her termination was the result of poor job performance. For the reasons that follow, the Court will grant the defendant's motion.

I. <u>The Summary Judgment Record</u>[1]

The plaintiff began working as a Clerical Tech III for the Department of Revenue in June 2007 on a probationary basis. Deposition of Jennifer Brown 81:14-16 ("Brown Dep"), Ex. D; Dec. 13, 2007 Letter from Nancy Poplawski ("Poplawski Letter"), Ex. A.[2] The plaintiff's direct supervisor was Cindy Hoffer and the plaintiff's manager was Nancy Poplawski. Pl.'s Compl. ¶¶ 6-7. Doree Anglemeyer, another employee with the Department, was assigned to train the plaintiff. Compl. ¶ 8. The plaintiff was the only African American in her department. Deposition of Cindy Hoffer 42:5-7 ("Hoffer Dep"), Ex. B.

Throughout the plaintiff's probationary period she received three performance evaluations, all apparently written by Ms. Poplawski. The evaluation form asked her supervisors to assess the plaintiff's performance with respect to a number of different criteria, including quality of work, initiative, cooperation, and dependability. Evaluation Form ("Evaluation Form"), Ex. C. On October 5, 2007, the plaintiff received her first performance evaluation, in which the plaintiff received low scores. Evaluation Form. In her second evaluation, dated

---

[1] On a motion for summary judgment, the Court considers the evidence in the light most favorable to the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).

[2] All exhibit references reflect those attached to the defendant's Statement of Undisputed Facts, unless otherwise noted.

2

November 5, 2007, the plaintiff received slightly improved, but still low overall scores. Id. In her comments to the second evaluation, Ms. Poplawski does note some progress by the plaintiff, but states that the plaintiff "remains unclear about some of the basic concepts associated with the collection of current real estate taxes and tax claims" and was generally experiencing difficulty with other aspects of her job. November 5, 2007 Evaluation, Ex. C.

In her final evaluation on December 14, 2007, the plaintiff's scores failed to improve. Evaluation Form. The comments attached to her final evaluation state that the plaintiff was "struggling with her assigned tasks far beyond what would be expected for an employee in this position for six months." December 10, 2007 Evaluation, Ex. C. On December 13, 2007, the plaintiff was terminated. Poplawski Letter. Ms. Poplawski's letter to the plaintiff stated that the plaintiff had "not progressed sufficiently" during her probationary training period and that the Department was observing a "general lack of understanding of some of the basic concepts surrounding the collection of taxes and continued difficulty in utilizing some of the tools that are necessary to perform your job function." Id.

The plaintiff makes several allegations in her complaint and deposition with which the defendant takes issue. Specifically, the plaintiff states that she was poorly trained

3

during her time at the Department. The plaintiff states that Ms. Anglemeyer failed to teach her all aspects of the tax software used by the Department, that she was not "cross-trained" for other jobs, and that generally Ms. Anglemeyer seemed too busy and inexperienced to properly train her. Compl. ¶¶ 14, 35, 37, 44. The plaintiff complained about her training to Ms. Poplawski and requested a new trainer, but never received one. Brown Dep. 60:8-18. In her deposition, the plaintiff blames any deficiencies in her work and progress on inadequate training. Brown Dep. 53:4-11, 58:6-10, 59:2-5, 61:5-8.

The plaintiff also describes some personal friction with Cindy Hoffer. The plaintiff states that it was "solely" Ms. Hoffer who treated her "differently" from her colleagues. Brown Dep. 68:22-24. The plaintiff describes Ms. Hoffer as "standoff-ish" and alleges that she "berated and insulted" the plaintiff when she had difficulty "cashing out" her drawer at the end of the day. Brown Dep. 66:12, 66:19-67:18, 73:16-17. The plaintiff states that Ms. Hoffer made the plaintiff late for some of her doctor's appointments by asking her whether she had finished various tasks as she was preparing to leave.[3] Brown Dep. 66:3-5, 76:1-18. The plaintiff never heard either Ms. Hoffer or anyone

---

[3] Ms. Hoffer admits that the plaintiff was delayed in going to at least one doctor's appointment, but alleges that it was because money was missing from the plaintiff's drawer when she went to cash out and they had to determine what had happened before she could leave. Hoffer Dep. 37:1-12.

4

else make any racially offensive remarks during her employment. Brown Dep. 71:3-16.

Ms. Hoffer denies that Ms. Anglemeyer was not qualified to train the plaintiff or that she failed to adequately train her. Hoffer Dep. 11:9-24, 17:11-22, 31:8-11. Ms. Hoffer also denies any personal hostility between she and the plaintiff, or that she ever berated the plaintiff. Hoffer Dep. 35:5-9, 36:11-14. Ms. Hoffer states that the plaintiff did not "cross-train", or advance to new responsibilities, because she was unable to master the basic requirements of her job. Hoffer Dep. 31:8-25.

The Court notes that the plaintiff also makes several allegations that her colleagues received better training than she did, that she was "looked over," and that Ms. Hoffer refused to "direct" Ms. Anglemeyer to properly train her. Brown Dep. 45:17-24, 46:9-23, 69:6-9. The plaintiff, however, has neither personal knowledge nor factual support to substantiate these claims.

II. Analysis

The plaintiff asserts claims of race discrimination under Title VII and the PHRA for her termination by the defendant. The defendant moves for summary judgment, arguing that the plaintiff cannot establish a prima facie case of discrimination because (1) the plaintiff is not qualified for the position, and (2) the plaintiff has not identified similarly

5

situated non-African American employees who were treated more favorably or shown that any other circumstances exist that would give rise to an inference of racial discrimination by the defendant. The defendant further argues that, even if the plaintiff could make out a prima facie case of race discrimination, the plaintiff does not rebut the defendant's legitimate, nondiscriminatory reasons for terminating the plaintiff.

A party moving for summary judgment must show that, when viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact and that judgment is appropriate as a matter of law. Fed. R. Civ. P. 56(c); <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001). A plaintiff's allegations and denials, unsupported by facts of record, do not create an issue of material fact sufficient to defeat summary judgment. <u>See</u> Fed. R. Civ. P. 56(e); <u>Anderson</u>, 477 U.S. at 248-49.

A. <u>Race Discrimination</u>

The Supreme Court's decision in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), governs the plaintiff's Title VII and PHRA discrimination claims. <u>See</u> <u>Jones v. Sch. Dist. of Phila.</u>, 198 F.3d 403, 409 (3d Cir. 1999). Under the McDonnell Douglas framework, a plaintiff must establish by a preponderance of the evidence a prima facie case of discrimination: (1) she is

6

a member of a protected class; (2) she was qualified for the position she held or sought; (3) she was subject to an adverse employment action; and (4) similarly situated members of other racial classes were treated more favorably, or that other circumstances exist that give rise to an inference of unlawful discrimination. Id. at 410-12. To support a claim of disparate treatment, the plaintiff must establish "some causal nexus" between her race and the decision to terminate her. Sarullo v. U.S. Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003).

If the plaintiff establishes a prima facie case of discrimination, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action. McDonnell Douglas, 411 U.S. at 802. If the defendant can do so, then the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the defendant's articulated reason is a pretext for discrimination. Id. at 804-05.

The defendant does not dispute that the plaintiff can satisfy the first and third prongs of the McDonnell Douglas analysis, as she is African American and was terminated from her position with the Department. The defendant contends, however, that the plaintiff has failed to show that she is qualified for the position or that any circumstances exist that give rise to an inference of discrimination. Because the Court agrees that the

plaintiff has failed to establish an inference of discrimination, it will not reach the issue of whether the plaintiff was qualified for the position.

To establish an inference of discrimination, the plaintiff alleges that she was treated differently from her "similarly situated" non-African American colleagues because she was not trained as well as they were, and therefore was not as well-prepared to do her job. The plaintiff does not seem to argue that she actually performed her job as well as her colleagues or that other employees who performed no better than she were not terminated, but rather that any problems with her performance were the result of her poor training.[4]

In order to identify similarly situated employees, the plaintiff must demonstrate that those employees and the plaintiff shared all relevant aspects of employment. See e.g., Kosereis v. Rhode Island, 331 F.3d 207, 214 (1st Cir. 2003); Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 603 (M.D. Pa. 2002). In addition to job function and seniority level, the Court must examine "other factors relevant to the particular workplace." Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 305 (3d Cir. 2004).

---

[4] The complaint does not allege that the inadequate training was itself a separate adverse employment action, but rather that it was evidence of the discriminatory intent that motivated the plaintiff's firing and/or was the cause for her ultimate termination.

The plaintiff here does not identify similarly situated non-African American employees who were treated more favorably than the plaintiff, and otherwise fails to establish any circumstances that would give rise to an inference of unlawful discrimination. The plaintiff merely alleges that other "probationary" colleagues received better training than she. The plaintiff offers no support for this claim other than her own observation that her colleagues seemed busier than she was, that they were advancing more quickly in terms of assuming new responsibilities, and that she was dissatisfied with her own training. Brown Dep. 45:12-24, 46:7-23. She cites to no corroborating evidence or facts in the record that would support her claim, nor do her allegations of disparate training reflect her personal knowledge.

When asked why she believed that Ms. Anglemeyer was not qualified to train her, the plaintiff responded that she was the "least experienced" member of the Department because she had only been there a year and a half, and that she was "still somewhat in training." Compl. ¶ 9; Brown Dep. 39:3-16. The plaintiff does not provide any evidence that other employees received more qualified or attentive trainers, or that other employees' training was in any way superior to her own. Nor does she offer any evidence that she was intentionally assigned an inadequate trainer due to racial animus on the part of Ms. Hoffer or anyone

9

else.

The only basis in the record for the plaintiff's allegations are her own perceptions and speculations, which are not sufficient to make out a prima facie case of discrimination. See Sarullo, 352 F.3d at 798.  Likewise, even if every negative incident with Cindy Hoffer occurred exactly as the plaintiff described, she has presented no evidence from which a fact-finder could reasonably infer that racial bias motivated Ms. Hoffer's actions, let alone that Ms. Hoffer's racist hostility somehow led to the plaintiff's ultimate termination.

Furthermore, the plaintiff does not demonstrate that the other non-African American employees with whom she compares herself shared all relevant aspects of employment.  She makes reference to a few other colleagues who she alleges were assuming additional responsibilities and seemed to have more work than she did, but does not say how long they had been working with the Department, how well they were progressing in their positions, or even what their job descriptions were.

Although the Court finds that the plaintiff has failed to satisfy a prima facie case of discrimination, even if she had been able to do so, the defendant has articulated a legitimate, nondiscriminatory reason for the termination: unsatisfactory job performance.  The plaintiff may rebut that reason and defeat summary judgment by pointing to "some evidence, direct or

circumstantial, from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Jones, 198 F.3d at 413.

The plaintiff has not offered any such direct or circumstantial evidence from which a fact-finder could conclude that the defendant's proffered reasons for firing her were pretextual. It is undisputed that the plaintiff received three negative performance evaluations throughout her six-month probationary period. The plaintiff herself admits that she had some difficulty performing certain tasks and that her supervisors expressed frustration with her performance and understanding of certain concepts. Brown Dep. 58:23-59:1, 59:12-19. Not only has the plaintiff failed to establish pretext, but the evidence tends to affirmatively support the defendant's articulated rationale for the termination.

## III. Conclusion

The plaintiff has failed to demonstrate sufficient evidence to establish a prima facie case of discrimination under the McDonnell Douglas analysis. The Court will grant the defendant's motion for summary judgment.

An appropriate order shall follow separately.